Christopher Layne House sued Jefferson State Community College and its president, Dr. Judy Merritt; he also named as defendants Dr. Fred Gainous, chancellor of the Alabama Department of Postsecondary Education, and six members of the State Board of Education (hereinafter the defendants will be referred to collectively as "Jeff State"). The crux of House's complaint was that Jefferson State Community College had improperly terminated his employment by terminating him without a due-process hearing. On January 21, 2004, the trial court, in response to a motion filed by Jeff State, entered a summary judgment for Jeff State. House filed a motion to alter, amend, or vacate the judgment, which the trial court denied, and House appealed.
The relevant facts appear to be undisputed. On March 2, 2001, House was employed by Jefferson State Community College as a computer-science instructor. He was employed pursuant to a written contract of employment that he had accepted on October 19, 2000. The contract clearly provided that House was employed in a probationary status, stating, in pertinent part:
 "Probationary appointment is made pursuant to The Alabama College System Policy Manual, effective December 8, 1994, policy number 619.01, section 3.1 and the subsequent Memorandum # 95-LGL-119 which states `. . . the employing authority may remove an employee by furnishing said employee written notification at least fifteen (15) calendar days prior to the effective date of termination.'"
Policy number 619.01 is the Revised Hearing Procedure adopted by the State Board of Education. Section 3.1 of policy number 619.01 provides, in pertinent part:
 "3.1 Probationary Period.
 "3.11 All [persons employed on a full-time basis by the president of an institution and whose salary is derived from Salary Schedules B, C, D, or E as established and adopted by the State Board of Education] shall be deemed employed on a probationary status for a period of three years from the date of his or her initial employment.
 ". . . .
 "3.13 With respect to any full-time employee under contract, at any time during such employee's probationary period, the employing authority may remove an employee by furnishing said employee written notification at least fifteen (15) calendar days prior to the effective date of termination.
 "3.14 If a probationary employee under contract is terminated within the period of a contract, the employee is entitled to be given cause and the opportunity for a hearing under these hearing procedures adopted by the State Board of Education. Employment agreements shall be offered for either 3, 9, or 12 months. . . ." *Page 426 
Memorandum number 95-LGL-119 is Chancellor Gainous's official interpretation of policy number 619.01. That memorandum states, in pertinent part:
 "[Section 3.13 of policy number 619.01] clearly states that an employee covered by this policy may be terminated at any time during the probationary period upon written notification. It further clearly states that the employee must be given at least fifteen (15) days notice prior to the effective date of termination. So long as the non-renewal or termination notice is rendered within the probationary period, the termination can be without cause. Termination without cause means that the employee is not entitled to be given a reason for the termination or a due process hearing.
 "Thus, without cause, any college employee covered by this policy and who is under a contract for a third year can be notified at any time at least fifteen (15) days prior to the end of the employee's third year's contract that the contract will not be renewed and that employment will cease as of the end of the business day on the final date of the contract. Further, without cause, any college employee covered by this policy and who is under an open-ended letter of appointment can be notified at any time within the three-year probationary period (even the next-to-last day of the three-year probationary period) that employment will be discontinued fifteen (15) days (or more, if desired by the president) from the date of the notice of termination. Even if the fifteen-day notice period causes the employment to go beyond the three-year probationary period, the employment can still be terminated without cause, so long as the written notice is served within the probationary period."
On March 2, 2001, Jefferson State Community College furnished House written notification that his employment would terminate on March 17, 2001. House was given no reason for the termination of his employment and was not afforded the opportunity for a hearing under the Revised Hearing Procedure set forth in policy number 619.01.
Jeff State's summary-judgment motion was based on its contention that House, as a probationary employee, had no right to a hearing on his termination and that his employment could be terminated for any reason, without cause. House was, according to Jeff State, properly terminated when he was given the 15-day written notice of termination. In response to Jeff State's summary-judgment motion, House argued, in pertinent part, that his termination had violated the rights given him under section 3.14 of policy number 619.01. Specifically, he argued that, according to section 3.14, he was "entitled to be given cause and the opportunity for a hearing," because he was "a probationary employee under contract [who was] terminated within the period of [the] contract."
Section 3.14 unambiguously provides that "[i]f a probationary employee under contract is terminated within the period of acontract, the employee is entitled to be given cause and the opportunity for a hearing" (emphasis added). However, the trial court concluded that House was employed, not under a contract for a specific period, but, instead, under "an open-ended letter of appointment." Thus, citing Chancellor Gainous's interpretation of section 3.13 in memorandum number 95-LGL-119, the trial court concluded "that any college employee who is under an open-ended letter of appointment [can] be notified that employment would be terminated fifteen [days] from the date of notice of termination." *Page 427 
"Our review of a summary judgment is de novo." Crutcher v.Wendy's of North Alabama, Inc., 857 So.2d 82, 85 (Ala. 2003). "The nature of our review of the legal conclusions of a trial court is de novo." Omega Leasing Corp. v. Movie Gallery, Inc.,859 So.2d 421, 422 (Ala. 2003). "When [the] terms [of an agreement] are clear and certain, the court . . . has the duty to determine the meaning of the agreement." Terry Cove North, Inc.v. Baldwin County Sewer Auth., Inc., 480 So.2d 1171, 1173 (Ala. 1985). From our review, we must conclude that House was "a probationary employee under contract," and that his employment was "terminated within the period of [the] contract." Therefore, pursuant to section 3.14, House was "entitled to be given cause and the opportunity for a hearing under" the Revised Hearing Procedure. Consequently, the trial court erred in granting Jeff State's summary-judgment motion.
Section 3.14 of policy number 619.01, the Revised Hearing Procedure, which was incorporated into House's contract of employment, provides that "[e]mployment agreements shall be offered for either 3, 9, or 12 months" (emphasis added). House's contract of employment indicated that his salary was to be derived from salary schedule D. The salary stated in House's contract of employment was the amount shown as rank II, step 10 of schedule D for "9-month" employment. While House's contract stated a beginning date for his contractual period, it did not state an ending date. However, considering the contract as a whole, the only reasonable conclusion is that House was employed on a 9-month basis. Ryan Warranty Servs., Inc. v. Welch,694 So.2d 1271, 1273 (Ala. 1997) ("[A] contract is to be construed in its entirety and not solely on a single provision.").[1]
On appeal, Jeff State never mentions section 3.14. Instead, it cites only Davis v. J.F. Drake State Technical College,854 So.2d 1151 (Ala.Civ.App. 2002). Jeff State argues that Davis is "a recent decision containing substantially similar facts, [in which] the Alabama Court of Civil Appeals upheld the termination of a probationary employee." Jeff State's brief, at 10. However, while House was required to leave his employment before his contract expired, the probationary employee in Davis, after receiving notice of his termination, was allowed to complete his contract. Thus, the holding in Davis involved only the interpretation of section 3.13 and did not require the Court of Civil Appeals to interpret or apply section 3.14.
Finally, Jeff State argues that House's claims are barred by the doctrine of sovereign immunity, as that principle is expressed in Ala. Const. 1901, § 14. Section 14 provides "[t]hat the State of Alabama shall never be made a defendant in any court of law or equity." However, "[t]his Court has recognized several species of action that are not `against the State' for § 14 purposes." Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala. 2002). Those include actions to compel State officials to perform their legal duties, as well as actions brought under the Declaratory Judgment Act, § 6-6-220 et seq., Ala. Code 1975.Jones v. Kennedy, 890 So.2d 975, 982 (Ala. 2004). House's complaint sufficiently implicates these exceptions from the protection afforded by § 14, and we hold that his claims against Jeff State are not barred by the doctrine of sovereign immunity. Therefore, the trial *Page 428 
court did not err in reaching the merits of Jeff State's summary-judgment motion.
For the foregoing reasons, the judgment of the trial court is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and LYONS, SMITH, and PARKER, JJ., concur.
[1] We also note that, after House's employment was terminated, the administrator of the Public Education Employees Health Insurance Plan was notified by Jefferson State Community College that House had not completed his "contract for [the] year."